23-1337
*Del Rio, et al. v. Amazon.com.dec.llc, et al.*

In the
United States Court of Appeals
for the Second Circuit

———————

August Term 2024
Argued: September 10, 2024
Decided: March 17, 2025

———————

No. 23-1337

———————

JAVIER DEL RIO, COLIN
MEUNIER, AND AARON
DELAROCHE, ON BEHALF OF
THEMSELVES AND OTHER
SIMILARLY SITUATED
EMPLOYEES,
*Plaintiffs-Appellants*,
v.
AMAZON.COM.DEDC, LLC, AMAZON.COM, INC., AMAZON.COM
SERVICES, LLC,
*Defendants-Appellees*,

AMAZON.COM SERVICES, INC.,
*Defendant*.

———————

Appeal from the United States District Court
for the District of Connecticut

———————

Before: LIVINGSTON, *Chief Judge*, PÉREZ, and NATHAN, *Circuit Judges*.

On appeal from a judgment of the United States District Court for the
District of Connecticut (Dooley, *J.*).

Employees filed a complaint seeking payment of straight-time and overtime wages under Connecticut's wage laws and regulations for time spent undergoing mandatory security screenings at their place of employment after clocking out. The United States District Court for the District of Connecticut granted summary judgment for the employers and dismissed the employees' complaint. The employees appealed and subsequently moved to certify a question to the Connecticut Supreme Court.

We determine nostra sponte that certification to the Connecticut Supreme Court is warranted on the question of whether Connecticut's wage laws and regulations require employees to be compensated for the time spent going through mandatory security screenings at their place of employment. Additionally, if time spent going through mandatory security screenings is compensable, then we ask the Connecticut Supreme Court to address whether a de minimis exception applies.

Questions certified. Appellants' motion to certify is dismissed as moot.

RICHARD A. HAYBER, Hayber, McKenna & Dinsmore, LLC, Hartford, CT, *for Plaintiffs-Appellants.*

SAMANTHA L. BROOKS, Seyfarth Shaw LLP (Daniel Benjamin Klein, Alison H. Silveira, Michael E. Steinberg, Seyfarth Shaw LLP, Boston, MA, *on the brief*), Washington, DC, *for Defendants-Appellees.*

MYRNA PÉREZ, *Circuit Judge*:

The matter before this Court presents an issue of unresolved Connecticut law: whether under Connecticut's wage laws and regulations, employees must be compensated for the time spent going through mandatory security screenings at their place of employment. We determine that this is a question that the

Connecticut Supreme Court should be given the opportunity to resolve in the first instance. If the Connecticut Supreme Court chooses to resolve this question in the affirmative, then we ask that it also address a secondary question: whether a de minimis exception applies and if so, what amount of time is considered de minimis.

Accordingly, we reserve decision and certify these questions to the Connecticut Supreme Court.

## I.   **Background**

Javier Del Rio, Colin Meunier, and Aaron Delaroche are former employees of Amazon.com Services LLC[1] ("Amazon"). Amazon is the owner and operator of warehouse facilities throughout Connecticut. It is in these warehouse facilities where Amazon merchandise is stored for later use in fulfilling customer orders.

Relevant to this matter are Amazon's facilities, BDL2, located in Windsor, Connecticut, and BDL3, located in North Haven, Connecticut. Messrs. Delaroche and Meunier worked at BDL2, and Mr. Del Rio worked at BDL3.

---

[1] Messrs. Del Rio and DeLaRoche began as employees of Amazon.com Services, Inc. and Mr. Meunier was an employee of Amazon.com.dedc, LLC, a company which later merged with Amazon.com Services, Inc. Amazon.com Services, Inc. eventually became known as Amazon.com Services LLC (defined above as "Amazon").

## A. Mandatory Security Screenings

Between April 2018 and March 15, 2020,[2] Amazon required employees at BDL2 and BDL3 to undergo security screenings before leaving the secured area of the fulfillment centers where merchandise was stored. Employees were not required to undergo the security screening procedure upon entry, but only when exiting the secured area.

Amazon required that every employee pass through a metal detector upon leaving the secured area, but the specific screening process varied based on the personal belongings an employee elected to carry with them. First, an express lane was available for employees who had nothing on their person. Employees processed through the express lane could just walk straight through the metal detector. Second, employees with items in their pockets would pass through the divesting tables. This required the employee to place their pocket items in a basket before passing through the metal detector. Third, employees who brought larger items such as bags, lunch boxes, and purses would have to place those items through an X-Ray machine while they passed through the metal detector. If an

---

[2] The security screening procedures were discontinued due to the COVID-19 pandemic, J. App'x at 79–80, and had not been resumed as of the date the depositions in the underlying district court litigation took place, *id.* at 76.

employee or their items set off an alarm during screening, the employee proceeded to a secondary screening at which point they were "wanded" by a security guard.

Each employee maintained some autonomy as to which security process they underwent. Prior to entering the secured area of Amazon's facilities, the employee could place their personal belongings in lockers provided by Amazon. But if an employee chose to bring in any belongings, they had to undergo the appropriate security process upon leaving the secured area for any reason. This included any time employees attempted to access breakrooms outside the secured area or to leave the facility during their breaks or at the end of their shift.

Amazon arranged the timeclocks within the fulfillment centers so that employees had to clock out before going through security. Employees were therefore not compensated for time they spent undergoing the security screening procedures.

## B. Litigation for Unpaid Wages

In response to Amazon's failure to compensate employees for time spent undergoing mandatory security screening, Plaintiffs-Appellants Del Rio,[3]

---

[3] Appellees dispute whether Plaintiff Del Rio is a party to this appeal since no reference to him is made in Appellants' opening brief. Yet Appellants clarified in their Reply brief that Del Rio remains a party to this suit and the claim brought by him has not been dismissed. Given that the district court's decision

Meunier, and Delaroche, on behalf of themselves and a class of current and former Amazon employees, filed a class action complaint in the State of Connecticut, Superior Court at Hartford against Defendants-Appellees Amazon.com.dedc, LLC; Amazon.com, Inc.;[4] and Amazon. Plaintiffs allege that Defendants violated Connecticut's wage laws by not compensating employees for the time spent going through the mandatory security procedure. In particular, Plaintiffs claim they are owed straight-time wages pursuant to Conn. Gen. Stat. § 31-72, Conn. Gen. Stat. § 31-71b *et seq.*, and Conn. Agencies Regs. § 31-60-11, and overtime wages pursuant to Conn. Gen. Stat. § 31-68 and Conn. Gen. Stat. § 31-76b(2)(A) *et seq.*[5]

Defendants timely removed the case to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. §§ 1332(d)(2), 1441(a). On September 20, 2021, Plaintiffs filed an amended class action complaint. Defendants moved for summary judgment, arguing that the time spent in mandatory security screenings is not compensable in light of the United States Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27

considered Del Rio's claim for unpaid straight-time wages, this Court will similarly consider Del Rio's claim.

[4] Amazon.com, Inc. is an indirect parent corporation of Amazon.com Services LLC. While named as a Defendant, it was not responsible for employing the named Plaintiffs.

[5] Plaintiff Del Rio does not bring a claim for unpaid overtime.

6

(2014). The district court granted summary judgment for Defendants and dismissed the Plaintiffs' amended complaint. Plaintiffs timely appealed.

During the pendency of this appeal, Appellants filed a motion to certify a question to the Connecticut Supreme Court, which Appellees opposed. A motions panel of this Court referred Appellants' motion to certify to the panel deciding this appeal.

## II. <u>Standard of Review</u>

We review a district court's summary judgment decision de novo. *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). In doing so, we view the facts, resolve all ambiguities, and draw all inferences in the manner most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 262 (2d Cir. 1965). We will affirm a district court's decision granting summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 137 (2d Cir. 2010).

## III.    Discussion

At the core of this dispute is whether Connecticut's wage laws and regulations require employees to be compensated for the time spent going through mandatory security screenings at their place of employment.[6] This is an unsettled question of Connecticut law, which we believe merits certification to the Connecticut Supreme Court.

When presented with a question of state law, and "in the absence of authoritative law from the state's highest court, [this Court] must either (1) predict how the state's highest court would resolve the state law question, or, if state law is so uncertain that we can make no reasonable prediction, (2) certify the question to the state's highest court for a definitive resolution." *RSD Leasing Inc. v. Navistar Int'l Corp.*, 81 F.4th 153, 169 (2d Cir. 2023) (alterations adopted) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)).  It is within this Court's discretion whether to certify a state law question to a state's highest court.  *See 53rd Street,*

---

[6] Appellants moved to certify the following question:  "Whether the District Court erred in holding that the Connecticut Assembly implicitly and silently 'intended to incorporate both the [FLSA] and the [federal Portal-to-Portal Act] when enacting its overtime scheme."  Plaintiffs-Appellants' Motion to Certify Questions of Law to the Connecticut Supreme Court, *Del Rio v. Amazon.com.dedc, LLC* (No. 23-1337) (2d Cir. filed Sept. 20, 2023), ECF No. 62.  While this Court agrees that certification of a question to the Connecticut Supreme Court is warranted, it chooses to certify a different question than that proposed by Appellants. Instead, for the reasons outlined in this opinion, this Court believes a question related to whether mandatory security screenings are compensable under Connecticut law is the more appropriate question for certification.

8

*LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 80–81 (2d Cir. 2021); *see also Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 198 (2d Cir. 2009) (deciding to certify a question nostra sponte); L.R. 27.2(a). Yet this Court recognizes that certification is an "exceptional procedure" and one to which it will "resort only in appropriate circumstances." *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004) (explaining that one such "appropriate circumstance[]" is where "the statute's plain language does not indicate the answer to the question pending" (internal quotation marks omitted)).

Furthermore, this Court may certify a question only when state law permits. *See 53rd Street*, 8 F.4th at 80. Connecticut law makes plain that the Connecticut Supreme Court may answer a question certified to it where "the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of [the] state." Conn. Gen. Stat. § 51-199b(d).

When determining whether to certify a question, this Court has "traditionally considered" the following factors: "[1] whether a state court decision has provided an authoritative answer[;] [2] the extent to which the question implicates the weighing of policy concerns of particular importance[;]

9

and [3] if the Connecticut Supreme Court's answer may be determinative of the appeal." *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 244 (2d Cir. 2021) (alterations in original) (quoting *Corsair Special Situations Fund, L.P. v. Pesiri*, 863 F.3d 176, 183 (2d Cir. 2017)).

For the reasons discussed in this opinion, all three factors favor certification in this case.

### A. Lack of an Authoritative Answer

First, there is no Connecticut state court decision that has provided an authoritative answer to the question this Court seeks to certify. While the Connecticut Appellate Court's decision in *Belgada v. Hy's Livery Service, Inc.*, 297 A.3d 199 (Conn. App. Ct. 2023) was instructive, and arguably the closest a Connecticut court has been to answering one of the precise questions this Court seeks to certify, we believe it falls short of answering the question.

In *Belgada*, the appellate court examined whether failure to pay employees for their meal breaks, in light of the fact that they were required to guard their limousines during those breaks, violated Connecticut's wage laws. *Id.* at 205. Specifically at issue in *Belgada* was the mealtime exception in Conn. Gen. Stat. § 31-76b(2)(A)'s definition of "hours worked" which provides that: "time allowed

10

for meals shall be excluded [from hours worked] unless the employee is required or permitted to *work*." (emphasis added). In determining whether time employees spent guarding the limousines during their lunch break was compensable, the appellate court determined that it had to define "work." *Id.* at 210. Given that "work" had not been defined by the Connecticut legislature, the appellate court chose to look to federal law. *Id.* Applying the Federal Labor Standards Act's ("FLSA") predominant-benefit test, the appellate court determined that the time spent guarding the limousines during meal breaks was not compensable. *Id.* at 210–12.

The appellate court's decision in *Belgada* appears to indicate that looking to the FLSA, as amended by the Portal-to-Portal Act ("PTPA"), is appropriate when the Connecticut legislature is silent with respect to how to interpret a statute. But, as raised by Appellants, the relevant portion of § 31-76b(2)(A)'s "hours worked" definition at issue here does not necessarily turn on defining "work."

Conn. Gen. Stat. § 31-76b(2)(A) and Conn. Agencies Regs. § 31-60-11 defines "hours worked," in relevant part, as follows:

> [A]ll time during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place . . . . Such time includes, but shall not be limited

11

to, the time when an employee is required to wait on the premises while no work is provided by the employer.

There are a number of reasons why, based on this definition's plain meaning, a court could deduce that time spent in mandatory security screenings is compensable. First, the definition itself encapsulates "time when an employee is required to wait on the premises," including time when "no work is provided by the employer." This would indicate that "hours worked" *may* include time spent by employees undergoing mandatory security screenings on their employer's premises. Second, no part of the provision indicates that "hours worked" is to be interpreted in the context of the FLSA, as amended by the PTPA, unlike other sections of Connecticut's wage laws. *See, e.g.*, Conn. Gen. Stat. § 31-76b(2)(D) ("Notwithstanding the provisions of this subdivision, when an individual employed by a third-party provider to provide 'companionship services,' as defined in the regulations of the federal Fair Labor Standards Act . . . ."). Third, the definition does not explicitly indicate whether mandatory security screenings would be excluded from the definition of "hours worked." *Cf.* Conn. Gen. Stat. § 31-76b(2)(A) (stating that "time allowed for meals shall be excluded unless the employee is required or permitted to work"). For these reasons, the plain meaning

of the definition of "hours worked" could suggest that time spent undergoing mandatory security screenings is compensable under Connecticut law.

On the other hand, and as advanced by Appellees, the definition of "hours worked" does not indicate what work is compensable under Connecticut law, and the district court in this case was arguably correct in looking to federal law for guidance. There are a number of sources available to support this argument. There first is the legislative history of Connecticut's overtime statute. For example, statements made at the time the statute was enacted indicated that Connecticut aimed to make its "legislation consistent with the federal law." 12 H.R. Proc., Pt. 9, 1967 Sess., at 3950. Decisions by the Connecticut Supreme Court have also looked to the FLSA when interpreting other provisions of the state's wage statutes. *See, e.g.*, *Williams v. Gen. Nutrition Ctrs., Inc.*, 166 A.3d 625, 629–30 (Conn. 2017) (determining that Connecticut wage laws allow the FLSA's use of the fluctuating-calculation method for most types of employees); *Roto-Rooter Servs. Co. v. Dep't of Lab.*, 593 A.2d 1386, 1390 n.8 (Conn. 1991) (interpreting a Connecticut statute according to an analogous federal provision where the statute's language "track[ed] the language" of the FLSA provision).

While Appellees are correct that the Connecticut Supreme Court has chosen to look to the FLSA in certain circumstances to interpret its own statutes, it does not always do so. For example, in *Williams*, the Connecticut Supreme Court answered a certified question seeking to clarify whether the FLSA's fluctuating method of calculating wages could be used in light of Connecticut's wage laws. 166 A.3d at 630. The Connecticut Supreme Court determined that since the Connecticut statute at issue was "nearly identical" to "its federal counter-part," there was no reason to interpret it any differently. *Id.* Yet, even where federal law is available to aid in the interpretation of Connecticut's wage laws, the Connecticut Supreme Court seems to begin its analysis by looking to the plain meaning of the state statute or regulation at issue. In *Williams*, although the Connecticut Supreme Court determined that applying the fluctuating-calculation method was appropriate in light of the relevant Connecticut statute, it determined that the same rule did not apply with respect to the relevant Connecticut regulation. *Id.* at 634. In making this determination, the court looked to the regulation's "common meaning" to determine that the language left "no room for an alternative calculation method." *Id.* at 631. Accordingly, the FLSA fluctuating-calculation method could not be used. *Id.* at 634. *Williams* is an example of how the

14

Connecticut Supreme Court does not always look to federal law when interpreting

Connecticut's wage laws.

The decision in *Williams* to prioritize the Connecticut regulation's plain

meaning before relying on federal law is consistent with the Connecticut Supreme

Court's decision in *Sarrazin v. Coastal, Inc.*, 89 A.3d 841 (Conn. 2014). In *Sarrazin*,

the Connecticut Supreme Court was clear that where "state law[] . . . provide[s]

the same or greater protection than that provided by the FLSA," state law applies.

*Id.* at 852. While *Sarrazin* was decided in the context of preemption, it shows how

the Connecticut Supreme Court will not always defer to federal law when

interpreting its wage laws and instead has treated the FLSA as the "national floor

with which state law must comply." *Id.*

In light of the plain meaning of the definition of "hours worked," the

legislative history of Connecticut's overtime statutes, and the state court decisions

that look to federal law in some circumstances but not others, this Court is left

without either clear authority to decide the issue before it or sufficient information

to make a prediction as to how Connecticut's courts would decide.[7]

---

[7] Although the United States Supreme Court concluded in *Busk* that time spent in mandatory security screenings is not compensable under the federal law, Connecticut, like other states, is entitled to decide for itself whether to interpret its wage laws the same way. The authority currently available is insufficient to

The first factor therefore weighs in favor of certification.  *See Khan v. Yale Univ.*, 27 F.4th 805, 831 (2d Cir. 2002).

## B.  Policy Concerns Favor Certification

Second, determining whether time spent in mandatory security screenings is compensable implicates important policy concerns and could have strong repercussions for employees throughout Connecticut.  We therefore believe it should be the Connecticut Supreme Court that determines whether under its laws, employees are entitled to compensation for this time.

A decision by this Court on this issue would have far-reaching implications. As Appellants' counsel highlighted at oral argument, there are at least two cases pending before the United States District Court for the District of Connecticut that hinge on the interpretation of "hours worked" as defined under Connecticut's wage laws.  *See* Oral Argument at 00:25–00:35; *see also Alfonso v. FedEx Ground*

---

determine whether Connecticut will reach the same conclusion about its state laws as the United States Supreme Court did about federal law.  Indeed, several other states rejected the *Busk* approach and determined that their state wage laws demand that employers compensate their employees for time spent in mandatory security screenings, even if federal law does not.  *See, e.g., In re Amazon.com, Inc.*, 255 A.3d 191 (Pa. 2021) (concluding that Pennsylvania wage law does not incorporate federal law and that time spent on an employer's premises undergoing mandatory security screenings was compensable); *Amaya v. DGS Constr., LLC*, 278 A.3d 1216, 1222 (Md. 2022) ("[W]hat constitutes 'work' under Maryland law is not limited to what is compensable work under [federal law].").  As the Connecticut Supreme Court has previously acknowledged, Connecticut's statute prescribing a cause of action for wage claims was enacted as a "remedial statute," with a "primary purpose" being to "penalize . . . employers."  *Butler v. Hartford Tech. Inst., Inc.*, 704 A.2d 222, 227 (Conn. 1997) (internal quotation marks omitted) (quoting *Shortt v. New Milford Police Dep't*, 562 A.2d 7, 14 n.13 (Conn. 1989)).

*Package Sys., Inc.*, No. 21-cv-1644 (D. Conn. filed Dec. 10, 2021) (alleging that the time spent by employees in mandatory security screenings both on their way to Defendant's facility and on their way out are compensable "hours worked"); *Johnson v. Walgreen E. Co., Inc.*, No. 23-cv-743 (D. Conn. filed June 7, 2023) (alleging that the time spent by employees walking on the premises before clocking in and after clocking out of their shift are compensable "hours worked"). At least one of these cases is stayed pending a decision by this Court. *See* Ruling on Defendant's Motion to Certify an Interlocutory Appeal at 2, *Johnson* (No. 23-cv-743), ECF No. 67. And these are only two examples. Absent clarification, there will likely be many more cases that raise the same question.

Additionally, any decision here may have far-reaching implications for the pay Connecticut employees are entitled to under their wage laws. This is because if this Court decides that time spent in mandatory security screenings is not compensable even though it satisfies the definition of "hours worked," we would be deciding for the Connecticut legislature that not all "hours worked" are compensable.

Furthermore, if this Court were to decide this case without the Connecticut Supreme Court's guidance, it would be depriving Connecticut of the unique

17

opportunity to assess the applicability of federal law in light of its own state laws. Doing so is especially problematic in light of the split this question has created between the states. Following the Supreme Court's decision in *Busk*, certain states decided that time spent undergoing mandatory security screenings was similarly not compensable under state law. *See, e.g.*, *In re Amazon.com, Inc., Fulfillment Ctr. FLSA & Wage & Hour Litig.*, 852 F.3d 601 (6th Cir. 2017); *see also Buero v. Amazon.com Servs., Inc.*, 521 P.3d 471 (Or. 2022). Yet, even though federal law does not require employers to compensate employees for time spent in security screenings, some states' wage laws do. *See, e.g.*, *Vaccaro v. Amazon.com.dedc, LLC*, Civ. Action No. 18-11852, 2020 WL 3496973, at *6 (D.N.J. June 29, 2020) (finding that employees must be compensated for the time spent in mandatory security screenings because New Jersey law is in direct conflict with the PTPA and therefore it chose not to incorporate it). Therefore, by rendering a decision without the Connecticut Supreme Court's guidance, this Court would effectively place Connecticut on a side of the split that its legislature may not have intended it to be on.

The second factor similarly favors certification.

18

## C. The Answer Controls the Outcome

As to the third factor, it is undisputed that the Connecticut Supreme Court's answer to these questions will determine the outcome of this appeal. As discussed in this opinion, it is unclear whether the Connecticut legislature envisioned that employees required to undergo mandatory security screenings should be entitled to compensation. If the Connecticut Supreme Court decides that the Connecticut legislature intended for its wage laws to emulate the FLSA, as amended by the PTPA, then this Court would affirm the judgment of the district court. In contrast, if the Connecticut Supreme Court decides that Connecticut's wage laws requires that employees be paid for undergoing mandatory security screenings, then this Court would determine the outcome of this appeal differently, in accordance with the provided guidance.

If the Connecticut Supreme Court determines that time spent undergoing mandatory screenings is compensable, it would also be important to address whether a de minimis exception applies. Appellants' testimony reflects a range of different amounts of time spent in the mandatory screenings. One estimated that he spent "an average of ten (10) seconds" going through the security screening, while another estimated that the "maximum estimate for time spent in security . . .

was three to four minutes" and "the longest he ever spent . . . was 10 minutes." J. App'x 96–97. These numbers show that the time spent in these mandatory screenings varies significantly, and that is particularly true where there are different screening procedures in place. Connecticut Appellate Court guidance indicates that "[t]here is no precise amount of time that may be denied compensation as de minimis" and "[n]o rigid rule" that can be followed, but "[r]ather, common sense must be applied to the facts of each case." *Nettleton v. C&L Diners, LLC*, 296 A.3d 173, 206 (Conn. App. Ct. 2023) (internal quotation marks omitted) (quoting *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984)). Accordingly, it would be beneficial to understand if the Connecticut Supreme Court seeks to apply a de minimis exception in the context of time spent in mandatory screenings, and the parameters of such exception.

This Court's decision on the merits in this case thus depends entirely on the Connecticut Supreme Court's response to the questions it certifies.

The third factor, too, favors certification.

20

## IV. <u>Conclusion</u>

For the reasons set forth in this opinion, we **CERTIFY** the following questions to the Connecticut Supreme Court pursuant to this Court's Local Rule 27.2 and Conn. Gen. Stat. § 51-199b:

> Whether under Connecticut's wage laws and regulations, employees must be compensated for the time spent going through mandatory security screenings at their place of employment?

> Whether a de minimis exception applies, and if so, what amount of time is considered de minimis?

The Connecticut Supreme Court may choose to reformulate or expand these questions in any way it sees fit. *See In re Santiago-Monteverde*, 747 F.3d 153, 159 (2d Cir. 2014). The above formulations are not intended to limit the scope of the analysis by the Connecticut Supreme Court.

The Clerk of this Court is **ORDERED** to transmit to the Clerk of the Connecticut Supreme Court this opinion, as our certificate, along with the briefs and appendices filed in this case by the parties. This panel retains jurisdiction to resolve this appeal after the disposition of the certification by the Connecticut Supreme Court.

In light of this opinion, Appellants' motion to certify a question to the Connecticut Supreme Court is denied as moot.

21